# In the United States Court of Federal Claims

No. 17-1015C

(Filed Under Seal: August 22, 2017)

(Reissued: August 29, 2017)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **VETERANS CONTRACTING GROUP, INC.,** | ) ) ) | Pre-award bid protest; motion for a preliminary injunction; protester's qualification as a service-disabled veteran-owned small business; jurisdiction; standing; differences between VA's and SBA's regulations; likelihood of success on the merits; equitable factors |
| **Plaintiff,** | ) ) | |
| v. | ) ) ) | |
| **UNITED STATES,** | ) ) | |
| **Defendant.** | ) ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Joseph A. Whitcomb, Whitcomb, Selinsky, McAuliffe, PC, Denver, Colorado, for plaintiff.

Kara M. Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Allison Kidd-Miller, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C. Of counsel were Steven Devine and Mark G. Machiedo, Office of General Counsel, United States Department of Veterans Affairs, and Karen Hunter, Office of General Counsel, United States Small Business Administration.

**OPINION AND ORDER**[1]

LETTOW, Judge.

This pre-award bid protest is before the court on plaintiff's motion for a preliminary injunction and the government's motion to dismiss. Plaintiff, Veterans Contracting Group

---

[1]Because this opinion and order might have contained confidential or proprietary information within the meaning of Rule 26(c)(1)(G) of the Rules of the United States Court of Federal Claims ("RCFC") and the protective order entered in this case, it was initially filed under seal. The parties were requested to review this decision and provide proposed redactions of any confidential or proprietary information. After the court held a hearing on proposed redactions, no redactions were allowed.

("Veterans"), previously was verified by the United States Department of Veterans Affairs ("VA") as a service-disabled veteran-owned small business ("SDVOSB").  It has a history of bidding on and securing awards of contracts from the VA that are set aside for competition among firms qualifying as SDVOSBs.  It planned to submit offers on two such solicitations announced by VA, but very recently it was disqualified as a SDVOSB as a result of a dispute that arose after Veterans received a contract award in January 2017 that was set aside for SDVOSBs.  After another bidder protested the award, an area office of the Small Business Administration ("SBA") determined in July 2017 that Veterans did not qualify as a SDVOSB and was therefore ineligible for the award.  Shortly thereafter, the VA informed Veterans that it was being removed from the VA database for qualified SDVOSBs.  Veterans then filed this bid protest with respect to the two SDVOSB procurements that have not yet been awarded, alleging that it is a qualified SDVOSB eligible for an award in those procurements and it should not have been removed from the VA database.

In seeking a preliminary injunction, Veterans requests that the court set aside the VA's decision to decertify Veterans as a SDVOSB, order the VA to reinstate Veterans into the SDVOSB database, and bar the VA from acting on the solicitations for awarding the two proposed contracts if and to the extent that Veterans is precluded from participating in the competition for those contracts.  The government has opposed that motion and moved to dismiss Veterans' complaint.  For the reasons stated, Veterans' motion is granted in part and the government's motion is denied.

## FACTS[2]

### A. *Veterans' Inclusion in the SDVOSB Database*

Veterans is a corporation organized under the laws of New York.  Compl. ¶ 24.  Ronald Montano, a service-disabled veteran, owns 51 percent of the company and Greg Masone owns the remaining 49 percent.  Compl. ¶¶ 22, 24.  On July 17, 2013, the VA, acting through the Center for Veterans Enterprise (now known as the Center for Verification and Evaluation) ("CVE"), verified Veterans as a qualified SDVOSB on its Vendor Information Pages ("VIP") database.  *See* Pl.'s Mem. of Points and Authorities in Support of Pl.'s Appl. for TRO, Prelim. Inj., Permanent Inj. and Declaratory Judgment ("Pl.'s Mem."), Ex. W (Letter from Andrea M. Gardner-Ince, Director, CVE, to Mr. Ronald Montano (July 17, 2013)), ECF No. 12-3.  A business must be included on the VA's VIP database to qualify as an eligible SDVOSB for a contract award.  *See* 38 U.S.C. § 8127(e), (f); 48 C.F.R. § 804.1102.  The VA subsequently performed site visits and reaffirmed Veterans' eligibility in 2014, 2015, and 2016.  *See* Pl.'s Mem. at 9, ECF No. 12-2.  The VA explained that Veterans satisfied the eligibility requirements in 38 C.F.R. Part 74, *see, e.g.*, Pl.'s Mem., Ex. EE (Letter from CVE (Aug. 26, 2016)), which are distinct from the SDVOSB-eligibility requirements set forth in the SBA regulations, as discussed *infra*.

---

[2]The recitations that follow constitute findings of fact by the court drawn from the administrative record of the procurement filed pursuant to RCFC 52.1(a).  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (explaining that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court").

*B. SBA's Decision Regarding Veterans' SDVOSB-Eligibility*

On January 5, 2017, Veterans learned that it was the lowest-priced bidder on an Invitation for Bids, solicitation number W912DS-16-B-0017, issued by the United States Army Corps of Engineers "for the removal of hazardous materials and demolition of buildings at the St. Albans Community Living Center in Jamaica, New York." Compl. ¶¶ 7, 10. The award was set aside for SDVOSBs, and Veterans certified itself as such in making its bid. Compl. ¶¶ 8-9. On January 11, 2017, Williams Building Company ("Williams"), another bidder that was second in line for the award, filed a protest with the contracting officer. *See* AR 16-126 to -127.[3] Williams asserted that Veterans was ineligible because it did not meet the size requirements for the procurement or qualify as a SDVOSB. *Id.* The contracting officer referred the protest to SBA, *see* AR Tabs 14-15, which was an option under the SBA's and VA's regulations, *see* 13 C.F.R. §§ 125.2, 125.14(b); 38 C.F.R. § 74.2(e).

Veterans thereafter provided additional information to SBA, including its shareholder agreement. AR Tabs 41-42; *see also* AR Tabs 43-60. An SBA area office determined that Veterans was eligible for the award in February 2017. AR Tab 13. Williams appealed that decision to the Office of Hearings and Appeals ("OHA"), AR Tab 11, and submitted supplemental briefing regarding Veterans' status as a SDVOSB, specifically focusing on the company's shareholder agreement, AR Tab 10. Before OHA addressed that appeal, however, SBA requested a remand in March 2017 to "reconsider the issues raised on [a]ppeal." AR 9-76 to -78. OHA granted that request. AR 8-73.

On July 18, 2017, the SBA area office determined that Veterans did not satisfy the SDVOSB eligibility requirements for the procurement and therefore sustained Williams' protest. AR 2-3. The SBA office explained that Mr. Montano, a service-disabled veteran, did not "unconditionally" own at least 51% of Veterans, as required by 13 C.F.R. § 125.12. AR 2-7 to -8. SBA specifically examined Veterans' shareholder agreement and found that "upon shareholder death, incompetency, or insolvency, all of his or her shares must be purchased by the corporation at the Certificate of Value price." AR 2-7; *see also* AR 48-450. According to SBA, that language restricted Mr. Montano's and his heirs' ability "to convey or transfer their [Veterans'] stock," thus placing "impermissible conditions" on Mr. Montano's ownership interest. AR 2-7 (relying upon *International Logistics Grp., LLC*, SBA No. VET-162, 2009 WL 5942359 (Oct. 1, 2009); *Wexford Group Int'l, Inc.*, SBA No. SDV-105, 2006 WL 4726737 (June 29, 2006)). Additionally, SBA found that Veterans' shareholder agreement prevented Mr.

---

[3]Citations to the administrative record refer to the record as filed on August 9, 2017 and corrected on August 16, 2017. The record is divided into tabs and paginated sequentially. In citing to the record, the court will first designate the tab, followed by the page number. For example, AR 16-126 refers to tab 16, page 126 of the administrative record.

3

Montano from controlling the corporation, as required by 13 C.F.R. § 125.13.  *See* AR 2-8 to -10.  Veterans has stated that it appealed SBA's decision on August 1, 2017.  Pl.'s Mem. at 8 n.2.[4]

### C. The VA's Removal of Veterans from the VIP Database

On July 21, 2017, the VA informed Veterans that it was "being removed from the VA [VIP] database in accordance with 38 C.F.R. § 74.2(e) based on [the SBA area office determination that Veterans did not qualify as a SDVOSB]."  AR 4-14; *see also* AR Tab 1.  Under 38 C.F.R. § 74.2(e), "[a]ny firm registered in the VetBiz VIP database that is found to be ineligible due to an SBA protest decision or other negative finding will be immediately removed from the VetBiz VIP database."  Further, "[u]ntil such time as CVE receives official notification that the firm has proven that it has successfully overcome the grounds for the determination or that the SBA decision is overturned on appeal, the firm will not be eligible to participate in the [SDVOSB] program."  *Id.*

### D. Veterans' Current Bid Protest

Veterans filed this bid protest on July 28, 2017, challenging the VA's decision to remove it from the VIP database and the underlying determination by SBA that it is ineligible to compete as a SDVOSB.  Compl. ¶ 1.  Veterans alleges that the government's actions have precluded it from competing for two upcoming "VA SDVOSB set-aside procurements."  Compl. ¶¶ 1-2.  The first solicitation, number VA242-17-B-0723, is a roof replacement contract at the Northport VA Medical Center in Northport, New York ("roofing solicitation").  *See* Compl., Ex. 1; Def.'s Resp. to Pl.'s Mot. for a Prelim. Inj. and TRO and Def.'s Mot. to Dismiss ("Def.'s Resp.") at 6, ECF No. 17.  Veterans submitted its bid on the roofing solicitation before the deadline of July 28, 2017, *see* Pl.'s Mem. at 2, but the government now represents that "the contracting officer has started the process of cancelling" the solicitation and plans to reissue it, Def.'s Resp. at 11 n.4.[5]  The second solicitation, number VA242-17-B-0713, is a relocation contract regarding the "SPS Castle Point Campus VA Hudson Valley Healthcare System" in Castle Point, New York ("relocation solicitation").  *See* Compl., Ex. 2; Def.'s Resp. at 6.  The government has extended the proposal deadline for the relocation solicitation from August 2, 2017 to August 23, 2017 at 1:30 p.m.  *See* Def.'s Notice of Revised Solicitation Deadline, ECF No. 7.

---

[4]On July 25, 2017, before filing its OHA appeal, Veterans submitted an amended and restated shareholder agreement to SBA and requested reinstatement as a SDVOSB.  Pl.'s Mem., Ex. S (E-mail from Ron Montano to Amy Kim, SBA (July 25, 2017)).  SBA informed Veterans that it could either request a re-examination and forgo the OHA appeal, or file an OHA appeal and request a re-examination after OHA's decision.  Pl.'s Mem., Ex. T (E-mail from Amy Kim, SBA to Joseph Whitcomb (July 28, 2017)).  Veterans chose to file the OHA appeal.

[5]On August 22, 2017, the government filed a notice advising that "DVA intends to cancel the solicitation in its entirety today due to the bids received being over the budget allocated for the project, and a new solicitation will be posted."  Def.'s Notice of Solicitation Cancellation, ECF No. 21.

On August 5, 2017, Veterans moved for a preliminary injunction. *See generally* Pl.'s Mot. for Prelim. Inj. ("Pl.'s Mot."), ECF No. 12.[6]  It specifically requests that the court set aside CVE's decision to decertify Veterans as a SDVOSB, order the VA to reinstate Veterans into the VIP database, and enable Veterans to compete for the SDVOSB set-aside roofing and relocation solicitations. *See id.*  On August 11, 2017, the government opposed that motion and moved to dismiss the complaint. *See generally* Def.'s Resp.  Veterans' motion for a preliminary injunction and the government's motion to dismiss were addressed at a hearing held on August 16, 2017.

## JURISDICTION

### A. Subject-Matter Jurisdiction

The Tucker Act, as amended, provides this court with jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1), added by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874; *see also Systems Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380-81 (Fed. Cir. 2012).  The court accordingly has jurisdiction over three types of bid protests: (1) a pre-award protest, (2) a post-award protest, and (3) "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1); *see also OTI Am., Inc. v. United States*, 68 Fed. Cl. 108, 113 (2005) (describing and ruling on the parameters of 28 U.S.C. § 1491(b)).

Veterans challenges the VA's decision to remove it from the VIP database, as well as the underlying SBA ineligibility determination that led to the VA's decision, on the grounds that those decisions were arbitrary, capricious, and contrary to law. *See* Compl. ¶¶ 1-2; Pl.'s Mem. at 13-14.  Because Veterans has been declared to be ineligible to compete for the SDVOSB solicitations at issue in this case, Compl. ¶¶ 1-2, Veterans' allegations fall within this court's jurisdiction under the third prong of Paragraph 1491(b)(1), *see, e.g.*, *RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999) (explaining that Subsection 1491(b) of the Tucker Act "does not require an objection to the actual contract procurement. . . .  As long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction"); *KWV, Inc. v. United States*, 108 Fed. Cl. 448, 453 (2013) (finding jurisdiction where a bid protester alleged that the "VA contravened its regulations governing [veteran-owned small business] eligibility through an unreasonable and inconsistent application of 48 C.F.R. § 819.307 . . . and 38 C.F.R. Part 74") (citing cases).

### B. Standing

To have standing in a bid protest, the party bringing suit must be an "interested party." *See* 28 U.S.C. § 1491(b)(1); *Systems Application & Techs.*, 691 F.3d at 1382.  A protester is an

---

[6]Veterans also concurrently submitted an application for a temporary restraining order, *see* Pl.'s Appl. for TRO, ECF No. 12-1, but that application is superseded by the motion for a preliminary injunction.

interested party if it can show that "(1) it was an actual or prospective bidder or offeror, and (2) it had a direct economic interest in the procurement or proposed procurement." *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1344 (Fed. Cir. 2008) (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006)). In a pre-award protest, the protester must establish that it has a direct economic interest by demonstrating "a non-trivial competitive injury which can be addressed by judicial relief." *Systems Application & Techs.*, 691 F.3d at 1382 (quoting *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1362 (Fed. Cir. 2009)).

Regarding the first prong, Veterans has submitted a bid on the roofing solicitation and is preparing a bid for the relocation solicitation. *See* Pl.'s Mem. at 2; Compl. ¶¶ 1-2.[7] Thus, Veterans' protest is in a pre-award posture regarding both of the solicitations and it has satisfied the first prong as a prospective bidder.

Regarding the second prong, the government argues that Veterans has failed to show a direct economic interest because it is not a qualified SDVOSB. Def.'s Resp. at 9-14. According to the government, Veterans cannot claim any direct economic interest because it was de-listed from the VIP database and is thus ineligible for the SDVOSB procurements at issue in this case. *See id.* As this court previously explained, however, the government's "logic is circular and would preclude any qualified concern from ever seeking a judicial remedy in response to an adverse decision by [the VA]." *Miles Constr., LLC v. United States*, 108 Fed. Cl. 792, 798 (2013) (finding standing where a bid protester challenged the VA's determination that the protester did not qualify as a SDVOSB). The VA's alleged error itself has prevented Veterans from competing for the solicitations. Thus, "[t]his is not a pre-award case where the alleged violation is immaterial." *Weeks Marine*, 575 F.3d at 1362 (finding standing where the protester had a "definite economic stake in the solicitation being carried out in accordance with applicable laws and regulations") (citing *CACI Field Servs., Inc. v. United States*, 854 F.2d 464, 466 (Fed. Cir. 1988)). Rather, the VA's alleged error has deprived Veterans of its "opportunity to compete" for the roofing and relocation solicitations, and such deprivation presents "sufficient economic harm to demonstrate prejudice for purposes of standing." *Magnum Opus Techs., Inc. v. United States*, 94 Fed. Cl. 512, 533 (2010) (citing *Distributed Sols.*, 539 F.3d at 1345; *LABAT-Anderson, Inc. v. United States*, 65 Fed. Cl. 570, 575-76 (2005)).[8]

---

[7]Although the deadline for bids on the roofing solicitation has passed, the government has not yet made an award for that contract, and it now states it is in the process of cancelling and reissuing the solicitation. Def.'s Resp. at 11 n.4; Def.'s Notice of Solicitation Cancellation.

[8]For its position on standing, the government relies on *CS-360, LLC v. United States*, 94 Fed. Cl. 488 (2010), where a protester submitted a bid for a SDVOSB set-aside procurement but was rejected by the contracting officer because it was not listed in the VA's VIP database. *Id.* at 493. The protester filed its bid protest to enjoin the VA from awarding the contract or proceeding with contract performance, but the court concluded that the protester lacked standing, reasoning that the protester did not have a substantial chance of receiving the contract award because it was not a qualified SDVOSB. *Id.* at 493-94, 500. Here, in contrast, Veterans has challenged the VA's decision to remove it from the VIP database on the ground that such actions have effectively prevented it from competing for awards under the solicitations directly at issue as well as other such solicitations. *See, e.g.*, Compl. ¶¶ 1-2. These allegations sufficiently present a non-trivial injury that can be addressed through judicial relief.

6

Additionally, the government asserts that the court lacks jurisdiction over SBA's ineligibility decision because Veterans appealed that decision to OHA and the appeal remains pending. Def.'s Resp. at 7-9. The government primarily relies on *Palladian Partners, Inc. v. United States*, 783 F.3d 1243 (Fed. Cir. 2015), where a protester filed a pre-award bid protest after a decision by an SBA area office affected the solicitation at issue, but did so while an OHA appeal of that decision filed by another interested party was still pending. *Id.* at 1250, 1261. The Federal Circuit held that dismissal was required because appellant failed "to participate in the pending OHA appeal" and therefore did not exhaust its administrative remedies. *See id.* at 1254-61. The government's reliance on *Palladian* is misplaced. Unlike in *Palladian*, where the protester did not participate in the appeal of a determination by an SBA area office pursued by a different interested party, *id.* at 1246, Veterans has challenged the VA's decision to remove it from the VIP database, *see, e.g.*, Pl.'s Mem. at 9-10. And, Veterans' protest is not based upon its January 2017 contract award that was considered by SBA and is currently on appeal to OHA, but rather is based upon the final action of the VA and the two pre-award solicitations that are unrelated to the contract award currently pending before OHA. This court has jurisdiction over Veterans' allegations under the Tucker Act, as discussed *supra*. Further, because the VA relied upon the July decision by an SBA area office in removing Veterans from the database, *see* AR 4-14, the reasoning underlying SBA's ineligibility determination is embedded within the VA's decision and therefore falls within the court's jurisdiction as well.

In sum, the court has jurisdiction over Veterans' bid protest.

## ANALYSIS

### *A. Statutory and Regulatory Framework*

To increase procurement opportunities for "small business concerns owned and controlled by veterans with service-connected disabilities," Congress authorized the VA to set aside certain contracts for SDVOSBs through the Veterans Benefits, Health Care, and Information Technology Act of 2006 ("Veterans Benefits Act"), Pub. L. No. 109-461, Title V, 120 Stat. 3403, 3425 (codified at 38 U.S.C. §§ 8127-28). *See* 38 U.S.C. § 8127(a), (e). To qualify as an eligible SDVOSB, the business must be verified by CVE and included on the VA's VIP database. *See* 38 U.S.C. § 8127(e), (f); 48 C.F.R. § 804.1102.

Under 38 C.F.R. § 74.3, "[a]n applicant or participant must be at least 51 percent unconditionally and directly owned by one or more . . . service-disabled veterans" to receive a SDVOSB certification from the VA. With respect to unconditional ownership, Section 74.3 further states:

> Ownership must not be subject to conditions precedent, conditions subsequent, executory agreements, voting trusts, restrictions on assignments of voting rights, or other arrangements causing or potentially causing ownership benefits to go to another (other than after death or incapacity). The pledge or encumbrance of

7

stock or other ownership interest as collateral, including seller-financed transactions, does not affect the unconditional nature of ownership if the terms follow normal commercial practices and the owner retains control absent violations of the terms.

38 C.F.R. § 74.3(b).

Correlatively, SBA also has regulations that address qualifications for SDVOSBs, albeit in different terms. Under 13 C.F.R. § 125.12, a SDVOSB "must be at least 51% unconditionally and directly owned by one or more service-disabled veterans. Section 125.12 of the SBA's regulations itself does not elaborate on the definition of "unconditional." *See Miles Constr.*, 108 Fed. Cl. at 802 (explaining that the VA's regulation at 38 C.F.R. § 74.3 includes "an extended definition of unconditional ownership" as compared to the SBA's regulation at 13 C.F.R. § 125.9, subsequently renumbered to 13 C.F.R. § 125.12, which does not). Even so, a related SBA regulation, 13 C.F.R. § 124.105, provides a reasonably detailed definition of unconditional ownership with respect to certain "socially and economically disadvantaged individuals." Under that regulation, "[a]n applicant or [p]articipant must be at least 51 percent unconditionally and directly owned by one or more socially and economically disadvantaged individuals" to qualify for a particular business development program. *See* 13 C.F.R. § 124.105. That regulation contemplates that "unconditional" refers to the effect of current executory arrangements, not everything that might happen in the future. For example, with respect to "[s]tock options' effect on ownership," the regulation explains that "[i]n determining unconditional ownership, SBA will disregard any unexercised stock options or similar agreements held by disadvantaged individuals." 13 C.F.R. § 124.105(e).

If SBA determines that a VA-certified SDVOSB does not satisfy SBA's eligibility requirements, 38 C.F.R. § 74.2(e) requires the VA to remove the entity from the VIP database.

### B. Standards for Preliminary Injunction

In a bid protest, the court may award any relief that it considers proper, including injunctive relief. 28 U.S.C. § 1491(b)(2). When determining whether to grant a preliminary injunction, the court must consider: (1) whether the movant is likely to succeed on the merits; (2) whether the movant will suffer from irreparable harm if an injunction is not granted; (3) whether the balance of hardships to the parties tips in the movant's favor; and (4) whether the public interest favors injunctive relief. *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259 (Fed. Cir. 2012) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)); *see also FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). "Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction." *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (citing *Amazon.com*, 239 F.3d at 1350). With that caveat regarding a preliminary injunction, "[n]o one factor, taken individually, is necessarily dispositive. . . . [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp.*, 3 F.3d at 427. A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries

the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis omitted) (citation omitted).

1. *Likelihood of success on the merits.*

To qualify for a preliminary injunction, Veterans must show that it is "more likely than not" to succeed on the merits of its claim. *See Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525-26 (Fed. Cir. 2012) (explaining that the standard in the context of a preliminary injunction is "more likely than not," rather than "clear or substantial likelihood," for matters unique to the Federal Circuit). On the merits, Veterans will need to show that the government's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *See also* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in [S]ection 706 of [T]itle 5.").[9]

Here, Veterans argues that SBA improperly relied on "erroneous" facts and law when it found that Mr. Montano did not unconditionally own 51 percent of Veterans. Pl.'s Mem. at 14. Veterans challenges both the VA's decision to remove it from the VIP database and the underlying ineligibility findings of the SBA area office, arguing that such decisions were arbitrary, capricious, and contrary to law. *Id.* at 13-14. The government, in contrast, focuses solely on the VA's decision, contending that CVE properly followed 38 C.F.R. § 74.2(e) when it removed Veterans from the VIP database after the SBA area office's ineligibility determination in July 2017. Def.'s Resp. at 19-20. The government's argument is misguided. Although CVE applied 38 C.F.R. § 74.2(e) in decertifying Veterans, the VA's decision was based upon conclusions reached by the SBA area office. *See* AR 4-14. Thus, as the court explained *supra*, the rationale underlying SBA's ineligibility determination is embedded within the VA's decision. The court accordingly must look not only at the VA's removal of Veterans from the VIP database, but also at the SBA findings underlying that removal.

In concluding that Mr. Montano did not unconditionally own at least 51 percent of Veterans pursuant to 13 C.F.R. § 125.12, the SBA area office examined Articles 9.01 to 9.03 of Veterans' shareholder agreement. AR 2-7; *see also* AR 48-450. Those Articles provide that if a shareholder dies, is found to be incompetent, or becomes insolvent, that shareholder "shall be deemed to have offered all the [s]hares of the [c]orporation owned by such [s]hareholder at the time of occurrence of any of the events specified above to the [c]orporation and the [c]orporation shall purchase such [s]hares at the Certificate Value and upon the terms and conditions hereinafter set forth." AR 48-450. Relying upon a dictionary definition of "unconditional" that formed the basis for two previous SBA decisions, *International Logistics Grp.*, 2009 WL 5942359, and *Wexford*, 2006 WL 4726737, the SBA area office stated that Articles 9.01 to 9.03 placed "impermissible conditions" on Mr. Montano's ownership interest in Veterans, AR 2-7.

---

[9]Ultimately, Veterans must also demonstrate that it was prejudiced by the government's arbitrary or unlawful conduct. *See Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004). Such prejudice is discussed *infra* in the context of irreparable harm.

9

In essence, the shareholder agreement provision cited by SBA is a clause that provides the company with the first opportunity to purchase the shareholder's shares when death, incompetency, or insolvency arises. This court previously examined a clause calling for an optional buy-out in the event of an involuntary withdrawal in the context of 38 C.F.R. § 74.3. In *AmBuild Co., LLC v. United States*, 119 Fed. Cl. 10 (2014), the court held that particular clauses within a company's operating agreement, including a clause calling for involuntary withdrawal in the event of bankruptcy and another providing for transfer of ownership by operation of law, did not affect the unconditional nature of ownership under 38 C.F.R. § 74.3. *Id.* at 23-26 (concluding that [the VA's Office of Small and Disadvantaged Business Utilization's ("OSDBU")] decision to decertify AmBuild and remove it from the VetBiz VIP Database was arbitrary and capricious and not in accord with VA's regulations"). Correlatively, in *Miles Construction*, the court addressed a clause providing a right of first refusal on the part of a minority shareholder that would arise when a service-disabled veteran owner had a *bona fide* offer to sell shares. *Miles Constr.*, 108 Fed. Cl. at 803. The court noted that the right was not presently executory and was a customary business provision that did not fall afoul of 38 C.F.R. § 74.3:

> In sum, the right of first refusal provision in Article XI is not presently executory, is a standard provision used in normal commercial dealings, and does not burden the veteran's ownership interest unless he or she chooses to sell some of his or her stake. As a result, Article XI, Paragraph 11.01 does not affect the veteran's unconditional ownership with regard to C.F.R. § 74.3(b). The decision by OSDBU to the contrary, *i.e.*, that Articles X, XI, and XII of the operating agreement rendered Miles ineligible for the VIP database, was arbitrary and capricious and contrary to law.

*Id.* at 803.

Although SBA's decision here was based upon its regulation, 13 C.F.R. § 125.12, not those of VA, the rationale underlying the *Miles Construction* and *AmBuild* decisions applies to this case as well. Significantly, the court in *Miles Construction* specifically considered *International Logistics Grp.* and *Wexford*, the two SBA decisions relied upon by SBA in this case, and disapproved them in context. *See Miles Constr.*, 108 Fed. Cl. at 801-02. The court rejected the government's reliance on those decisions and instead determined that the right-of-first refusal clause was not executory at that time, thus concluding that the clause did not affect unconditional ownership. *See id.* at 801-03; *see also AmBuild Co.*, 119 Fed. Cl. at 25 (relying on *Miles Constr.*, 108 Fed. Cl. at 803)). SBA did not address or discuss such findings in reaching its decision with respect to Veterans' eligibility. *See generally* AR Tab 2.

Additionally, the definition of "unconditional" set forth in *Wexford*, 2006 WL 4726737, at *6, and adopted by the SBA area office in its decision addressing Veterans' eligibility, *see* AR 2-7, is based upon a dictionary definition of "unconditional," *see Wexford*, 2006 WL 4726737, at *6; *see also International Logistics Grp.*, 2009 WL 5942359, at *4-5 (quoting *Wexford*, 2006 WL 4726737, at *6). Resort to a dictionary definition of "unconditional" is both unnecessary and inappropriate. SBA regulations expressly define unconditional ownership in the context of "socially and economically disadvantaged individuals." 13 C.F.R. § 124.105. Such regulatory

guidance relates to eligibility for a business development program, and it provides insight into the scope of unconditional ownership for SDVOSB-eligibility.  Notably, 13 C.F.R. § 124.105(e) states that "SBA will disregard any unexercised stock options or similar agreements held by disadvantaged individuals" in determining whether an applicant unconditionally owns the company at issue.  This provision, which was not addressed by the SBA area office, directly bears on Veterans' shareholder agreement and its status as a SDVOSB.

In sum, based upon the foregoing analysis, the SBA area office's findings underlying the VA's decision to remove Veterans from the VIP database fail to provide "a coherent and reasonable explanation" for SBA's exercise of discretion, *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001) (citation omitted), or articulate a "rational connection between the facts found and the choice made," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).  The court therefore finds that Veterans is more likely than not to succeed in proving that the government's actions were arbitrary and capricious or not in accordance with law.

2. *Irreparable harm.*

Veterans asserts that if it is not granted injunctive relief, it will suffer irreparable harm because it will be deprived of the opportunity to compete for SDVOSB procurements.  *See* Pl.'s Mem. at 14-15.  Upon removal of Veterans from the VIP database, it will be unable to compete for the roofing and relocation solicitations at issue in this case, as well as any future SDVOSB solicitations respecting which it would otherwise be an eligible competitor.  *Id.*  Further, as a small business, Veterans represents that its inability to obtain work as a SDVOSB could threaten its viability.  *See id.* at 15.

The "[d]enial of the opportunity to compete for a contract can constitute irreparable harm."  *Miles Constr.*, 108 Fed. Cl. at 806 (citing *Electronic On-Ramp, Inc. v. United States*, 104 Fed. Cl. 151, 169 (2012); *NetStar-1 Gov't Consulting, Inc. v. United States*, 101 Fed. Cl. 511, 530 (2011), *aff'd*, 473 Fed. Appx. 902 (Fed. Cir. 2012)); *see also United Int'l Investigative Servs., Inc. v. United States*, 41 Fed. Cl. 312, 323 (1998) ("[T]he opportunity to compete for a contract and secure any resulting profits has been recognized to constitute significant harm.") (citing cases).  Providing the injunctive relief contemplated here, *i.e.*, setting aside the CVE's removal of Veterans from the VIP database and reinstating Veterans as a qualified SDVOSB, would circumvent the potential harm to Veterans by allowing it to compete for the SDVOSB set-aside procurements at issue.  Thus, the court finds that Veterans will suffer irreparable harm if injunctive relief is not provided.

3. *Balance of hardships.*

The government argues that it will be harmed if the relocation solicitation is indefinitely stayed.  Def.'s Resp. at 21-22.  Reinstating Veterans into the VIP database, however, would render Veterans eligible for the relocation solicitation without further delay of that contract.  Given Veterans' likelihood of success on the merits of its claim and the irreparable harm it will suffer if injunctive relief is not provided, the court finds that the balance of hardships weighs in

favor of granting Veterans' preliminary injunction and temporarily reinstating Veterans into the VIP database as a qualified SDVOSB.

*4. Public interest.*

Finally, the government contends that the public interest does not weigh in favor of injunctive relief because the upcoming SDVOSB solicitations at issue here have "operate[d] within the bounds of the law." Def.'s Resp. at 22 (citation omitted). Such an argument is misplaced. If the government has wrongfully prevented Veterans from competing for a contract award that it should be eligible to receive, as Veterans claims, the integrity of that procurement is compromised. "The public has a strong interest in preserving the integrity of the procurement process." *KWV*, 108 Fed. Cl. at 458 (citing *Bona Fide Conglomerate, Inc. v. United States*, 96 Fed. Cl. 233, 242-43 (2010); *SAI Indus. Corp. v. United States*, 60 Fed. Cl. 731, 747 (2004)); *see also PGBA, LLC v. United States*, 60 Fed. Cl. 196, 221 (2004), *aff'd*, 389 F.3d 1219 (Fed. Cir. 2004). Thus, the court finds that the public interest will be served by ensuring that Veterans has the opportunity to fairly compete for the SDVOSB procurements.

## CONCLUSION

For the reasons stated, Veterans' motion for a preliminary injunction is GRANTED IN PART and the government's motion to dismiss is DENIED.[10] CVE's decision dated July 21, 2017, rendering Veterans ineligible for contracts awarded to SDVOSBs, is set aside. The VA shall restore Veterans to the VIP database of approved SDVOSB entities. Accordingly, Veterans shall be allowed to compete for the relocation solicitation.[11] The court's grant of preliminary relief will remain in effect until the court resolves Veterans' claim for permanent relief. Because this preliminary relief is structured to ameliorate harm that might arise from delays in the VA's procurement activities, Veterans is required to provide security. Pursuant to RCFC 65(e), Veterans shall give security in the amount of $150,000 to pay costs and damages sustained by the VA if it is found to have been wrongfully enjoined. Veterans shall provide such security on or before August 25, 2017.[12]

The parties are requested to file a joint status report on or before August 31, 2017, addressing proposals for further proceedings in this case.

---

[10] Veterans' application for a temporary restraining order is superseded and thus DENIED as moot.

[11] Because the government has stated that the roofing solicitation is in the process of being cancelled and reissued, Def.'s Resp. at 11 n.4; Def.'s Notice of Solicitation Cancellation, Veterans' claim with respect to that solicitation is moot and the court need not address it in granting relief.

[12] A generally applicable form of security bond for a preliminary injunction can be found at Form 11 of the court's rules. For terms and provisions of a satisfactory security, plaintiff is encouraged to contact the Clerk of Court.

It is so **ORDERED**.

                                              s/ Charles F. Lettow
                                              Charles F. Lettow
                                              Judge