# In the United States Court of Federal Claims
No. 17-1015C

(Filed Under Seal: December 15, 2017)

(Reissued: December 21, 2017)

**********************************

| | |
|---|---|
| **VETERANS CONTRACTING GROUP, INC.,** ) ) ) **Plaintiff,** ) ) **v.** ) ) **UNITED STATES,** ) ) **Defendant.** ) ) | Pre-award bid protest; restoration of SDVOSB to the VA's VetBiz VIP database; cancellation of one solicitation; prospective, not retroactive, restoration of SDVOSB to the VetBiz VIP database, award of bid preparation and proposal costs |

***********************************

Joseph A. Whitcomb, Whitcomb, Selinsky, McAuliffe, PC, Denver, Colorado, for plaintiff.

Kara M. Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Chad A. Readler, Acting Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Allison Kidd-Miller, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C. Of counsel were Steven Devine and Mark G. Machiedo, Office of General Counsel, United States Department of Veterans Affairs, and Karen Hunter, Office of General Counsel, United States Small Business Administration.

### OPINION AND ORDER[1]

LETTOW, Judge.

This pre-award bid protest returns to this court after the issuance of a preliminary injunction,[2] action by the agency to substantially recast the two solicitations at issue, and the

---

[1]Because of the protective order entered in this case, this opinion was initially filed under seal. The parties were requested to review this decision and provide proposed redactions of any confidential or proprietary information. The resulting redactions are shown by brackets enclosing asterisks, *e.g.*, "[***]."

filing of a first and then a second amended complaint by the protester.  Plaintiff, Veterans Contracting Group ("Veterans"), was initially verified by the United States Department of Veterans Affairs ("VA") as a service-disabled veteran-owned small business ("SDVOSB").  While Veterans was preparing to submit bids on two VA solicitations set aside for SDVOSBs, the Small Business Administration ("SBA") issued a decision in a protest before it, disqualifying Veterans as an SDVOSB.  Shortly thereafter, VA informed Veterans that, due to that adverse decision, it was being removed from the VA database for SDVOSBs eligible to compete for VA procurement set-asides.[3]  Veterans then filed this bid protest and sought a preliminary injunction with respect to the two SDVOSB procurements it had been preparing to pursue.  Veterans alleged that it was a qualified SDVOSB eligible for an award in those procurements and should not have been removed from the VA database.

This court granted Veterans' motion for preliminary injunction in part, ordering VA to restore Veterans to the procurement database and rendering it eligible to compete for SDVOSB set-asides.  This Veterans was able to do with regard to one of the solicitations, but VA canceled the other.  As the circumstances evolved, Veterans sought and was granted leave to amend its complaint on two occasions to protest that cancellation, and the administrative record was supplemented to account for the new developments.

Veterans then moved for judgment on the administrative record, seeking both declaratory and injunctive relief.  First, Veterans requests a declaration that Veterans' removal from the VA database was arbitrary, capricious, a violation of VA's regulations, and an abridgment of Veterans' due process rights, rendering permanent the relief ordered by the court's preliminary injunction.  Second, Veterans seeks an injunction barring VA from cancelling the second solicitation and ordering it to consider Veterans retroactively eligible for an award of a contract based upon that solicitation.  The government has responded with a cross-motion for judgment on the administrative record.

## STATUTORY AND REGULATORY FRAMEWORK

"In an effort to encourage small businesses, Congress has mandated that federal agencies restrict competition for some federal contracts."  *Kingdomware Techs., Inc. v. United States*, __ U.S. __, __, 136 S. Ct. 1969, 1973 (2016).  The task of promulgating regulations "set[ting] forth procedures . . . to set aside contracts for" SDVOSBs has been assigned to two distinct agencies,

---

[2]*See Veterans Contracting Grp. Inc. v. United States*, 133 Fed. Cl. 613 (2017) (granting a preliminary injunction setting aside the agency's decision to remove the protester from the VetBiz VIP database of approved SDVOSB entities and restoring the protester to the list).

[3]SBA's decision was rendered by its Office of Hearings and Appeals ("OHA"), and came in a procurement by the Corps of Engineers.  Veterans was the low bidder in that procurement and had been awarded the contract by the Corps, but a competing offeror protested the award and triggered the proceedings that ultimately resulted in OHA's decision to disqualify Veterans from the award by the Corps.  Veterans protested that disqualification in a separate, related post-award bid protest, but the court denied relief and upheld the disqualification based on SBA's regulations that diverge materially from those adopted by VA.  *See Veterans Contracting Grp. Inc. v. United States*, ___ Fed. Cl. ___, 2017 WL 6505208, No. 17-1188C (Dec. 11, 2017).

VA and SBA. *See Kingdomware Techs.*, 136 S. Ct. at 1973 (internal quotation marks omitted); *see also* 15 U.S.C. § 657f (SBA); 38 U.S.C. § 8127(a), (e) (VA). VA and SBA have established separate but overlapping regulatory frameworks for these set-asides. *Compare* 38 C.F.R. Part 74 (VA), *with* 13 C.F.R. Part 125 (SBA).

Congress authorized VA to set aside certain contracts for "small business concerns owned and controlled by veterans with service-connected disabilities" through the Veterans Benefits, Health Care, and Information Technology Act of 2006 ("Veterans Benefits Act"), Pub. L. No. 109-461, tit. V, 120 Stat. 3403, 3425 (codified as amended in relevant part at 38 U.S.C. §§ 8127-28). *See* 38 U.S.C. § 8127(a), (e). The Act and, *a fortiori*, the regulations it authorizes apply only to VA procurements. *See Angelica Textile Servs., Inc. v. United States*, 95 Fed. Cl. 208, 222 (2010) ("The [VA] is responsible for implementing the Veterans Benefits Act; indeed, it is the only federal department or agency to which the Act's requirements apply."); *see also* 48 C.F.R. § 819.7002 (explaining that the VA's implementing regulations apply only to "VA contracting activities and to its prime contractors" and "to any government entity that has a contract . . . or other arrangement with VA to acquire goods and services *for VA*") (emphasis added).

VA implemented the Veterans Benefits Act through the "Veterans First Contracting Program," established in 2007. *See AmBuild Co. v. United States*, 119 Fed. Cl. 10, 19 (2014). "At the Program's commencement, SDVOSB . . . entities were permitted to self-certify . . . for registration in the VetBiz VIP database." *Id.* But the authorizing statute was subsequently amended to require the Secretary of Veterans Affairs to maintain the database and certify contracting entities through the VA's Center for Verification and Evaluation ("CVE"). *Id.* (citing 38 U.S.C. § 8127(e), (f)); *see also* 48 C.F.R. § 804.1102. A business must be included on the VA's VetBiz VIP database to qualify as an eligible SDVOSB for a contract award. *See* 38 U.S.C. § 8127(e), (f); 48 C.F.R. § 804.1102. CVE now certifies participating entities and maintains such certification by performing examinations that "review . . . a[t] a minimum . . . all documents supporting the application, as described in [38 C.F.R.] § 74.12." *See* 38 C.F.R. § 74.20(b). These "examination[s] may be conducted on a random, unannounced basis, or upon receipt of specific and credible information alleging that a participant no longer meets eligibility requirements." *Id.* § 74.20(a).

"When CVE believes that a participant's verified status should be cancelled prior to the expiration of its eligibility term," CVE notifies the small business and allows 30 days for it to respond. *See* 38 C.F.R. § 74.22(a)-(b). Upon a determination that cancellation is warranted, the director of the CVE will issue a reasoned notice of cancellation, and the business will be removed from the VetBiz VIP database. *See id.* § 74.22(c)-(d). The business then has a right to appeal the determination to the Office of Small and Disadvantaged Business Utilization and Center for Veterans Enterprise "within 30 days of receipt of [the] cancellation decision" or to "re-apply after it has met all eligibility criteria." *Id.* § 74.22(c), (e).

38 C.F.R. § 74.22 does not provide the only process for removing a participant from the VIP database.  VA adopted 38 C.F.R. § 74.2(e) in 2010,[4] and, with this single provision, protest decisions by SBA, presumably applying SBA's own regulations, could potentially displace VA's cancellation and removal process without accounting for the differences between the two agencies' underlying regulatory eligibility criteria.  Subsection 74.2(e) states:

> Any firm registered in the VetBiz VIP database that is found to be ineligible due to an SBA protest decision or other negative finding will be immediately removed from the VetBiz VIP database. Until such time as CVE receives official notification that the firm has proven that it has successfully overcome the grounds for the determination or that the SBA decision is overturned on appeal, the firm will not be eligible to participate in the [Veterans First Contracting P]rogram.

38 C.F.R. § 74.2(e).  This provision is not remarkable in isolation but, due to the differences in the VA and SBA regulations, addressed *infra*, it can create anomalous results. It was just this kind of anomalous outcome that was set aside by the preliminary injunction issued in this case. *See Veterans Contracting Grp.*, 133 Fed. Cl. 613.

To qualify for CVE certification as an SDVOSB, "[a] small business concern must be *unconditionally owned* and controlled by one or more eligible . . . service-disabled veterans." 38 C.F.R. 74.2(a) (emphasis added).  When the small business concern is a corporation, "at least 51 percent of each class of voting stock outstanding and 51 percent of the aggregate of all stock outstanding must be unconditionally owned by one or more . . . service-disabled veterans." *Id.* § 74.3(b)(3).  VA has defined unconditional ownership in commercially customary terms:

> *Ownership must not be subject to* conditions precedent, conditions subsequent, *executory agreements*, voting trusts, restrictions on assignments of voting rights, or other arrangements causing or potentially causing ownership benefits to go to another (other than after death or incapacity). The pledge or encumbrance of stock or other ownership interest as collateral, including seller-financed transactions, does not affect the unconditional nature of ownership if the terms follow *normal commercial practices* and the owner retains control absent violations of the terms.

*Id.* § 74.3(b) (emphasis added).

This court previously interpreted and applied these regulations in *Miles Constr., LLC, v. United States*, 108 Fed. Cl. 792 (2013), and *AmBuild*, 119 Fed. Cl. 10.  In *Miles*, the VA had removed Miles Construction from the VetBiz VIP database because there was a restriction on the service-disabled veteran's ownership interest, allegedly rendering his ownership conditional. 108 Fed. Cl. at 800-01.  The company's Operating Agreement granted a right of first refusal to "the company, or the remaining members of the company if the company declines, . . . to purchase a member's shares, should he or she decide to sell." *Id.* at 801.  The government asserted that that provision of the Operating Agreement was an executory agreement that

---

[4]See Veteran-Owned Small Business Guidelines, 75 Fed. Reg. 422, 378 (Feb. 8, 2010) (codified at 38 C.F.R. § 74.2(e)).

violated 38 C.F.R. § 74.3(b) "because it prevent[ed the] owner from acting [unilaterally] upon his ownership interest." *Id.* This court disagreed because the right-of-first-refusal provision was "not presently executory" as it had not been triggered by the veteran "choos[ing] to sell some of his . . . stake" and because it was "a standard provision used in normal commercial dealings." *Id.* at 803 (relying on 38 C.F.R. § 74.3(b)).

In *AmBuild*, the question was, *inter alia*, whether a provision of an Operating Agreement that permits the company to purchase the veteran-owner's ownership interest in cases of "bankruptcy, receivership, and transfer by court order or operation of law" rendered ownership conditional in violation of 38 C.F.R. § 74.3(b). 119 Fed. Cl. at 16, 23-24. The government argued that it did because "personal bankruptcy does not ordinarily result in the divesture of ownership." *Id.* at 24. But this court disagreed, noting that "the property of every business owner is automatically placed in custody of the court upon bankruptcy," and determining that the operating agreement reflected "a standard commercial arrangement in compliance with 38 C.F.R. § 74.3(b)." *Id.* at 25.

Congress has also authorized SBA to designate SDVOSB set-asides, creating the Service-Disabled Veteran-Owned Small Business Concern ("SDVOSBC") program.[5] Unlike the VA's regulatory approach, "SBA's program . . . has no required verification program, relying instead on [annual self-certification via] the System for Award Management." *Veterans Contracting Grp., Inc.*, SBA No. VET-265, 2017 WL 4124865 at *9 (Aug. 31, 2017); *see also* 13 C.F.R. § 125.33. In place of CVE-type oversight, SBA permits other bidders on specific solicitations to protest the status or the ownership and control of the competing small business concern. *See* 13 C.F.R. § 125.29 ("What are the grounds for filing an SDVOSBC protest?"). When challenging on ownership or control grounds, the protestor must "present[] credible evidence that the concern is not 51% owned and controlled by one or more service-disabled veterans." *Id.* § 125.29(b). Such protests are handled first by an SBA area field office and then are appealable to OHA. *See id.* §§ 125.30-25.31; *see also generally id.* Part 134 ("Rules of Procedure Governing Cases Before the Office of Hearings and Appeals").

Eligibility in SBA's SDVOSBC program requires the small business concerns to be "at least 51% unconditionally and directly owned by one or more service-disabled veterans." 13 C.F.R. § 125.12. The SDVOSBC program, in contradistinction to the VA set-aside program, does not include a definition of unconditional ownership. *See* 13 C.F.R. § 125.11 (specifying definitions important to the SDVOSB program, but omitting a definition of "unconditional ownership"). Instead, SBA uses an interpretation by OHA of what is now 13 C.F.R. § 125.12, as set forth in *The Wexford Group Int'l, Inc.*, SBA No. SDV-105, 2006 WL 4726737 (June 29, 2006). There OHA determined "the plain and ordinary meaning of the word" "unconditional" by looking to a dictionary. *Wexford*, 2006 WL 4726737, at *6 & n.2. From the dictionary definition, OHA determined that "in the context of 13 C.F.R. § 125.[12],"

---

[5]The SBA's SDVOSBC program was authorized by the Veterans Entrepreneurship and Small Business Development Act of 1999, Pub. L. No. 106-50, 113 Stat. 233 (codified as amended at 15 U.S.C. §§ 657b-57c), and the Veterans Benefits Act of 2003, Pub. L. No. 108-183, 117 Stat. 2651 (codified as amended at 15 U.S.C. § 657f and 38 U.S.C. §§ 1821, 4113, 5109B, 7112), and implemented via SBA regulations codified at 13 C.F.R. §§ 125.11 to 125.33.

> unconditional necessarily means there are no conditions or limitations upon an individual's present or immediate right to exercise full control and ownership of the concern. Nor can there be any impediment to the exercise of the full range of ownership rights. Thus, a service-disabled veteran: (1) Must immediately and fully own the company (or stock) without having to wait for future events; (2) Must be able to convey or transfer interest in his ownership interest or stock whenever and to whomever they choose; and (3) Upon departure, resignation, retirement, or death, still own their stock and do with it as they choose. In sum, service-disabled veterans must immediately have an absolute right to do anything they want with their ownership interest or stock, whenever they want.

*Id.* This absolutist interpretation is a sharp departure from the definitions promulgated via regulation in SBA's other small business programs. *See* 13 C.F.R. §§ 124.3 (defining "unconditional ownership" for the 8(a) program for small disadvantaged businesses), 127.201 (defining "unconditional ownership" for the Women-Owned Small Business program). The definitions in those programs build in nuances virtually identical in effect to VA's definition, particularly the allowance to "follow normal commercial practices" common to each of them. *See* 38 C.F.R. § 74.3; 13 C.F.R. §§ 124.3, 127.201. For SBA, however, service-disabled veterans must have "an absolute right to do anything they want with their ownership interest or stock, whenever they want." *See Wexford*, 2006 WL 4726737 at *6.

## FACTS[6]

Veterans is a corporation organized under the laws of the State of New York. Compl. ¶ 24.[7] Ronald Montano, a service-disabled veteran, owns 51 percent of the company and Greg Masone owns the remaining 49 percent. Compl. ¶¶ 22, 24. On July 17, 2013, VA, acting through the CVE, verified Veterans as a qualified SDVOSB on its VIP database. *Veterans Contracting*, 133 Fed. Cl. at 616. The VA carried out subsequent annual site visits between 2014 and 2016, evaluating and reaffirming Veterans' eligibility to remain in the database as an SDVOSB. *Id.* at 617.

On January 5, 2017, Veterans learned that it was the lowest-priced bidder on an SDVOSB set-aside, solicitation number W912DS-16-B-0017, issued by the United States Army Corps of Engineers "for the removal of hazardous materials and demolition of buildings at the St. Albans Community Living Center in Jamaica, New York." Compl. ¶¶ 7-8, 10. On January 11, Williams Building Company ("Williams"), second-place bidder on the solicitation, filed a protest

---

[6]The recitations that follow constitute findings of fact by the court drawn from the administrative record of the procurements filed pursuant to Rule 52.1(a) of the Rules of the Court of Federal Claims ("RCFC"). *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (explaining that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court").

[7]Although Veterans filed amended complaints, the basic allegations of fact were set out in the original complaint, and that complaint will be cited for background in this opinion.

with the contracting officer, challenging both Veterans' size and status as an SDVOSB. *See* Compl. ¶ 11; AR 16-126 to 39.[8] The contracting officer referred the protest to SBA, *see* AR Tabs 14-15, pursuant to SBA regulations, *see* 13 C.F.R. §§ 125.2, 125.14(b).

An SBA area office issued a size determination on February 2, 2017, concluding that Veterans was a small business. AR 12-104. Later that month, the area office also issued its status determination, concluding that Veterans "met the [SDVOSB] eligibility requirements at the time of its [bid]." AR 13-112 to 17. Williams appealed the status determination to SBA's OHA on February 28, 2017. *See* AR Tab 11. Before OHA rendered a decision on Williams' appeal, SBA requested that the SBA area office's determination be remanded "for further review and investigation." AR 9-76 to 78. OHA granted that remand on April 3. AR 8-69 to 73. On remand, the SBA area office reversed itself, determining that Veterans was ineligible to bid as an SDVOSB, and therefore sustained Williams' protest. *See* AR 2-3 to 12. The SBA area office explained that, in light of Veteran's shareholder agreement, Mr. Montano did not unconditionally own Veterans because that agreement restricted his heirs' ability to convey or transfer Veterans stock. *See Veterans Contracting*, 133 Fed. Cl. at 617.

On July 21, 2017, three days after the SBA area office determination, "VA informed Veterans that it was being removed from the VA VIP database in accordance with 38 C.F.R. § 74.2(e) based on the SBA area office determination that Veterans did not qualify as a SDVOSB." *Veterans Contracting*, 133 Fed. Cl. at 617 (internal brackets and quotations marks omitted). Veterans filed this bid protest on July 28, challenging the VA's decision to remove it from the VIP database and the underlying determination by SBA. *See generally* Compl. Veterans alleged that the government's actions precluded it from competing for two upcoming "VA SDVOSB set-aside procurements." Compl. ¶ 1. The first solicitation, number VA242-17-B-0713, was a relocation contract regarding the "SPS Castle Point Campus VA Hudson Valley Health Care System" in Wappingers Falls, New York ("relocation solicitation"). *See* Compl., Ex. 2. The second solicitation, number VA242-17-B-0723, was a roof replacement contract at the Northport VA Medical Center in Northport, New York ("roofing solicitation"). *See* Compl., Ex. 1. Veterans moved for a preliminary injunction, specifically requesting "that the court set aside CVE's decision to decertify Veterans as a SDVOSB, order the VA to reinstate Veterans into the VIP database, and enable Veterans to compete for the SDVOSB set-aside roofing and relocation solicitations." *Veterans Contracting*, 133 Fed. Cl. at 618. On August 22, this court granted in part Veterans' motion for a preliminary injunction, ordering VA to "restore Veterans to the VIP database of approved SDVOSB entities." *Id.* at 624.

The preliminary injunction explicitly "allowed [Veterans] to compete for the relocation solicitation," *id.*, because the government had not proceeded with the solicitation process, instead "extend[ing] the proposal deadline," *Veterans Contracting*, 133 Fed. Cl. at 618, before

---

[8]Citations to the administrative record refer to the record as filed on August 9, 2017, as corrected on August 16, 2017, and as supplemented on September 20, 2017. The record is divided into tabs and paginated sequentially. In citing to the record, the court will first designate the tab, followed by the page number. For example, AR 16-126 refers to tab 16, page 126 of the administrative record.

suspending it pending the resolution of Veterans' motion for a preliminary injunction, *see* Hr'g Tr. 7:12-24 (Nov. 21, 2017).[9] After being restored to the VetBiz VIP database, Veterans submitted a bid for the relocation solicitation; no award has as yet been made. Hr'g Tr. 28:5-17. Contrastingly, the court did not explicitly address the effects of the preliminary injunction on the roofing solicitation because, although Veterans had timely submitted its bid, "the government [indicated] that the contracting officer ha[d] started the process of cancelling the solicitation and plan[ned] to reissue it." *See Veterans Contracting*, 133 Fed. Cl. at 618 (internal quotation marks omitted).

VA received four bids for the roofing solicitation but only two were responsive, *i.e.*, they met "the terms and conditions set forth in the solicitation," and only responsive bids may be considered for the contract award. *See* AR 96-924. Veterans was one of the bids that was "deemed unresponsive" and was "removed from consideration due to a lack of [V]et[B]iz certification" as of the application deadline, July 28, 2017. *See id.* The two responsive bidders' proposals were [***] and [***] for a project with an independent "[g]overnment estimate [("IGE")] of $3.6 million." *Id.* The two unresponsive bidders, Veterans and [***] had offered to do the work for [***] and [***] respectively. AR 88-901; 86-887. Because the responsive bids were more than "[***] higher than the IGE," the contracting officer determined that the bids were "not fair and reasonable" and sought "to cancel the solicitation." AR 94-922. The VA ultimately cancelled the roofing solicitation on August 22, 2017, "due to [the] bids being much higher than [the] government could deem reasonable." AR 99-930. VA indicated that it "plan[ned] to issue a new solicitation for the [roofing solicitation]." *Id.*

Veterans sought and was granted leave to supplement its pleadings to protest the cancellation of the roofing solicitation. *See* Order Granting in Part and Den. in Part Mot. to Suppl. Pleadings, ECF No. 34; Order Granting Mot. to Suppl. Pleadings, ECF No. 37; Order Granting Pl.'s Mot. for Leave to File a Second Suppl. Compl., ECF No. 46. It alleges that the cancellation was pretextual because its unresponsive bid was within the solicitation's "scope of construction." *See* Am. Suppl. Compl. for Declaratory and Inj. Relief ("Suppl. Compl.") ¶ 19, ECF No. 44-1. Veterans requests a declaratory judgment that "the VA acted unreasonably . . . when it cancelled the solicitation . . . under pretext," and "when it removed [Veterans] from the [V]et[B]iz database without first providing [n]otice and an opportunity to respond." Suppl. Compl. at 11. Veterans seeks "a permanent injunction ordering the VA to reverse its determination to cancel [the roofing] solicitation . . . or [refrain from making] any further changes to the procurement until this court has fully adjudicated [Veterans'] SDVOSB status" and "to restore [Veterans] to the [V]et[B]iz database[,] retroactively effective no later than July 21, 2017." Suppl. Compl. at 11. Finally, it also seeks an award of "attorneys' fees and expenses; and . . . such other and further relief as is equitable and just." Suppl. Compl. at 11; *see generally* Pl.'s Mot. for Judgment on the Admin. Record ("Pl.'s Mot."), ECF No. 49. The government opposed Veterans' motion, filing a cross-motion for judgment on the administrative record. *See generally* Def.'s Cross-Mot. for Judgment on the Admin. Record and Resp. to Pl.'s Mot. for Judgment on the Admin. Record ("Def.'s Cross-Mot."), ECF No. 50. All issues have been fully briefed and argued and are now ready for disposition.

---

[9]The date will be omitted from later citations to the transcript of the hearing on the merits conducted on November 21, 2017.

## STANDARDS OF REVIEW

Standards in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, govern the court's review of a challenge to an agency's decisions regarding contractual solicitations or awards. *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). Under the APA, courts may set aside agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), subject to the traditional balancing test applicable to a grant of equitable relief. *See PGBA, LLC v. United States*, 389 F.3d 1219, 1224-28 (Fed. Cir. 2004). Where an agency decision is so set aside, "the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2). The question of whether the court would have applied the procurement regulations in a different manner than did the agency is irrelevant to this inquiry. *See Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989). The court may not "substitute its judgement for that of the agency." *Miles Constr.*, 108 Fed. Cl. at 798 (citing *Keeton Corrs., Inc. v. United States*, 59 Fed. Cl. 753, 755 (2004) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds as recognized in Califano v. Sanders*, 430 U.S. 99, 105 (1977))). The court may overturn an agency decision only "if '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). In short, the court "look[s] to see whether the agency considered the relevant factors and made a rational determination." *Keeton Corrs.*, 59 Fed. Cl. at 755 (*citing Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057-58 (Fed. Cir. 2000)).

## ANALYSIS

### A. Removal from and Restoration to the VetBiz VIP Database

Veterans claims that its removal from the VetBiz VIP database was "arbitrary, capricious, [and] contrary to established law" on two grounds. *See* Mem. . . . in Support of Pl.'s Appl. for TRO, Prelim. Inj., Permanent Inj., and Declaratory Judgment (Pl.'s Mem.) at 15, ECF No. 47. First, "CVE made the decision to remove [Veterans] from the . . . database without considering 38 C.F.R. § 74.22" in violation of "the APA[ and Veteran's] constitutionally protected procedural due process rights." *Id.* Second, Veterans' removal was "unsupported by the facts" because "[t]here is no evidence in the record that CVE even reviewed the SBA's basis for issuing the adverse determination." *Id.* Notably, Veterans is not challenging 38 C.F.R. § 74.22 on constitutional grounds or otherwise. *See* Hr'g Tr. 10:1-2 (adverting that the government asserted that Veterans "is somehow challenging the regulation, [Subsection 74.22; Veterans] is not"); Pl.'s Mot. at 11. It is Veterans' view that Subsection 74.22 "establishes the procedural due process safeguards for removing an SDVOSB from the . . . database" and that it "makes no exceptions for negative SBA determinations" despite Subsection 74.2(e). *See* Pl.'s Mot. at 14. As such, argues Veterans, VA's denial of a 30-day notice and an opportunity to "explain[] why

the proposed ground(s) [did] not justify cancellation" was a failure to follow its own regulations and thus necessarily was arbitrary and capricious. *See id.*; 38 C.F.R. § 74.22.

The government argues that the CVE did no more than act "in accordance with 38 C.F.R. § 74.2(e), which states that" CVE "will . . . immediately remove[]" the business adjudicated ineligible by SBA from the database. Def.'s Cross-Mot. at 18. Further, the government asserts, Subsections 74.22 and 74.2(e) "clearly apply to separate actions." *Id.* at 19. Subsection 74.22 only applies when *CVE* believes that "a participant's verified status should be cancelled," whereas Subsection 74.2(e) pertains to ineligibility due to *SBA's* determination. *See id.* at 19-20.

The court concurs with the government that the two regulations at issue do indeed govern separate actions. When the CVE believes that an SDVOSB has become ineligible, it follows the procedures set out in Subsection 74.22, including providing 30-days' notice and the opportunity to make an argument to the agency. In contrast, Subsection 74.2(e) provides the agency with a streamlined process, piggybacking off SBA's proceedings. *See* 38 C.F.R. § 74.2(e). Any argument by Veterans that it was denied due process in the context of regulatory protections is ultimately unconvincing in this case. Veterans was a party to the SBA proceeding and had an opportunity to be heard before the agency. Additionally, Subsection 74.2(e) has been in place since 2010; Veterans had notice that an adverse decision by the SBA could trigger its removal from the VIP database.

Even so, this court disagrees with the government that Subsection 74.2(e) relieves CVE from any obligation to look beyond the fact that SBA has issued an adverse determination before removing an SDVOSB from the VetBiz VIP database. As explained above, the eligibility requirements in the VA and SBA SDVOSB set-aside programs are similar in some respects but are materially divergent in others. The differences are insignificant if and when the SBA protest giving rise to removal from the VIP database treats an area in which the regulations are the same or similar, *e.g.*, size of the business; if SBA determines that an SDVOSB is not small then it would be justifiably disqualified from both programs. But, as in this case, an uncritical application of Subsection 74.2(e) would require an SDVOSB's immediate removal from the VetBiz VIP database if the business fails to meet the SBA's *Wexford* definition of "unconditional" despite meeting the VA's definition of the term as set out at 38 C.F.R. § 74.3(b).

It is unquestionably true that "an agency must abide by its own regulations," *AMS Assocs., Inc. v. United States*, 737 F.3d 1338, 1343 (Fed. Cir. 2013) (citing *Fort Stewart Sch. v. Federal Lab. Rel. Auth.*, 495 U.S. 641, 654 (1990), but it is equally true that it must apply them rationally. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Subsection 74.2(e) does not take account of the differences between these two programs, and it is arbitrary for VA to mechanistically apply Subsection 74.2(e) without examining the basis for SBA's ruling. In this case, VA's removal of Veterans from the database cost Veterans the opportunity to compete for a contract for which it was otherwise eligible. In light of the distinct definitions of "unconditional ownership" in the two programs, CVE must look beyond the fact of a ruling by SBA, to determine whether it was based on grounds consistent with or contrary to VA's eligibility regulations. VA's letter notifying Mr. Montano of Veterans' removal stated only that the SBA "decision found that Veterans . . . was not owned and controlled by one or more [s]ervice-[d]isabled [v]eterans." AR. 4-14. There was no

consideration of or finding that Veterans was ineligible due to an eligibility requirement consistent with VA's regulations.  In sum, there was no "rational connection between the facts found and the choice made," thus rendering CVE's action arbitrary and capricious.  *See State Farm*, 463 U.S. at 43 (citing *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962), *superseded by statute on other grounds as recognized in New York Shipping Ass'n v. Federal Mar. Comm'n*, 854 F.2d, 1338 (D.C. Cir. 1988)).

Therefore, the preliminary injunction that restored Veterans to the VetBiz VIP database is hereby reaffirmed and made permanent.

### B.  The Relocation Solicitation

Both counsel for the government and counsel for Veterans have represented to the court that, with regard to the relocation solicitation, Veterans has not been prejudiced by its wrongful removal from the VetBiz VIP database.  *See* Hr'g Tr. 7:12-17, 28:5-17.  The VA voluntarily extended the deadlines for proposals responding to the relocation solicitation.  Hr'g Tr. 28:6-11.  Upon being restored to the database, Veterans submitted a bid and has been able to compete for the relocation solicitation.  *Id.*  In the absence of any prejudice, the court need not take any further action as to that pre-award procurement.

### C.  The Roofing Solicitation Cancellation

Veterans challenges the cancellation of the roofing solicitation as arbitrary and capricious, alleging that it was "pretextual" and that the agency lacked a "compelling reason." Pl.'s Mem. at 8-9 (citing *Overstreet Elec. Co., v. United States*, 47 Fed. Cl. 728, 732 (2000) ("[A]n award must be made to that responsible bidder who submitted the lowest responsive bid, unless there is a compelling reason to reject all bids and cancel the invitation.") (internal quotation marks omitted)); *see also* Suppl. Compl. ¶ 19.  Veterans argues that the government's rationale that "none of the responsive offers were reasonably priced" is "unreasonable on its face" because Veterans' bid was reasonable and "CVE illegally removed [Veterans] from the . . . database." Pl.'s Mem. at 9.  As a remedy for this violation, Veterans asks the court to "retroactive[ly] render[ Veterans] . . . eligible to compete for the [roofing] solicitation," effectively awarding Veterans the contract.  *See* Pl.'s Mot. at 15 (heading).

The government disagrees, arguing that CVE had a compelling reason: "[T]he bids received were over the budget allocated for the project." Def.'s Cross-Mot. at 13.  The government explains that while Veterans' bid was only [***] percent over the IGE, Veterans was not a responsive bidder because it was not in the VIP database "at the time it submitted its bid, which the solicitation required." *Id.*  The solicitation states: "All prospective bidders must be . . . verified/visible/certified in VIP VetBiz . . . at the time of offer submission and before award of this procurement." AR 80-827.  When the contracting officer checked the database on July 28, the application deadline, to verify Veterans' status, it was not there.  *See* AR 92-918.  The government also contends that even if Veterans is entitled to be restored to the VIP database, there is no basis for a retroactive restoration.  Def.'s Cross-Mot. at 22-25.  Rather, the government asserts, the typical remedy for such wrongful removals is to "extend [the business']

11

year-long verified eligibility . . . to account for the days it was wrongfully excluded from the VIP database." *Id.* at 23 (citing *KWV, Inc. v. United States*, 111 Fed. Cl. 119, 128 (2013)).

The court concurs with the government. The court may overturn an agency decision only "if '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Centech Grp.*, 554 F.3d at 1037 (quoting *Impresa Construzioni*, 238 F.3d at 1332). The contracting officer looked only to the fact that CVE had removed Veterans from the VIP database and could not have known that CVE had acted arbitrarily. He followed the normal procedures for handling the procurement. Because Veterans did not meet the requirements of a solicitation, it was ineligible to compete for the contract. With Veterans disqualified, the remaining responsive bids were sufficiently above the IGE that the officer had discretion to cancel and resubmit the solicitation. He did so. In short, there was a rational connection between the facts as the contracting officer understood them and the choices he made. *See State Farm*, 463 U.S. at 43. By acting rationally and following the proper procurement procedures, he neither acted arbitrarily nor capriciously, and this court cannot overturn his decision.

Veterans argues that *Miles*, 108 Fed. Cl. 792, supports its request for retroactive restoration. Pl.'s Mot. at 15-16. *Miles* does not require that result. Unlike Veterans, Miles Construction was eligible under the requirements of the solicitation when it submitted its bid. *See Miles*, 108 Fed. Cl. at 795-96. It was only after it had been determined to be the lowest bidder that its status was challenged and it was delisted. *Id.* When the court restored it to the database and ordered the agency to "consider Miles' apparent low bid in response to the [s]olicitation," it was with the understanding that it was "likely that [Miles Construction would] have received the award but for" the intervening agency decision. *Id.* at 798, 806-07. In contrast, at no time between the deadline for bid submission and the cancellation of the roofing solicitation was Veterans eligible to compete for the roofing contract. This court issued a preliminary injunction on August 22, 2017, setting aside the delisting of Veterans and restoring it to the VetBiz VIP database, and that date demarcates Veterans' eligibility to compete for VA SDVOSB set-asides.

That is hardly to say that Veterans was not prejudiced by the CVE's arbitrary application of VA's regulation as to the roofing solicitation or that no remedy is available. While the court does not believe the retroactive injunctive relief sought by the Veterans is proper, the court does award Veterans its reasonable bid preparation and proposal costs for the roofing solicitation.

## CONCLUSION

For the reasons stated, Veterans' motion for judgment on the administrative record is GRANTED IN PART and DENIED IN PART, the government's cross-motion for judgement on the administrative record is GRANTED IN PART and DENIED IN PART.[10] This court's

---

[10] Veterans' motions for a second preliminary injunction, ECF Nos. 31 and 47, have been consolidated with the merits in accord with RCFC 65(a)(2) and thus are moot. The government's motions to partially dismiss for lack of subject matter jurisdiction, for failure to

preliminary injunction dated August 22, 2017, which set aside CVE's decision removing Veterans from the VetBiz VIP database, is hereby made permanent.  Veterans' year-long eligibility in the VIP database shall be extended by 34 days to account for the period during which it was wrongfully excluded from competing on VA procurement set-asides.  Although Veterans is denied retroactive injunctive relief for the cancellation of the roofing solicitation, it shall recover its reasonable bid preparation and proposal costs regarding that solicitation.

There being no just reason for delay, the clerk shall enter judgment under RCFC 54(b) on Veterans' claims addressed by this opinion and order.

Insofar as bid preparation and proposed costs are concerned, Veterans shall submit a reckoning of its bid preparation and proposal costs on or before January 17, 2018.  The government shall respond to Veterans' submission of such costs by January 31, 2018.

It is so **ORDERED**.

s/ Charles F. Lettow  
Charles F. Lettow  
Judge

---

state a claim, and to strike, filed with its response to Veterans' motions for preliminary injunction, ECF No. 48, are likewise superseded and thus are moot.